UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

SPRINT COMMUNICATIONS
COMPANY, L.P., et al.,

                              **Plaintiffs,**

            **-against-**

Andrew CHONG,

                              **Defendant.**

------------------------------------------------------------------X

**13-CV-03846 (RA)(SN)**

**<u>REPORT AND
RECOMMENDATION</u>**

SARAH NETBURN, United States Magistrate Judge.

TO THE HONORABLE RONNIE ABRAMS:

      On September 12, 2013, the Honorable Ronnie Abrams entered a default judgment against the defendant Andrew Chong, who formerly was identified in this action under the alias "Andrew Leung," and granted the plaintiffs six months to conduct discovery as to damages. On September 13, 2013, Judge Abrams referred this case to my docket to conduct an inquest and to report and recommend concerning the plaintiffs' damages. The plaintiffs seek a total award of $125,874.15. Because the plaintiffs have provided a sufficient basis on which to award damages, and because the Court finds it appropriate to apply some reduction in the attorneys' fees sought, the Court recommends a total award in the requested amount of $116,915.65.

**BACKGROUND**

      The plaintiffs, Sprint Nextel Corporation, Sprint Communications Company, L.P., and Boost Worldwide, Inc. (a subsidiary of the Sprint Nextel Corporation) (collectively, "Sprint" or the "plaintiffs") filed this action on June 5, 2013, and filed their amended complaint on June 10, 2013, alleging the following claims against the defendant, Andrew Chong ("Chong" or the

"defendant"), who was formerly identified in this case under the alias "Andrew Leung": (1) breach of contract; (2) unfair competition; (3) tortious interference with business relationships and prospective advantage; (4) civil conspiracy; (5) unjust enrichment; (6) conspiracy to induce breach of contract; (7) common law fraud; (8) fraudulent misrepresentation; (9) trafficking in computer passwords under 18 U.S.C. § 1030(a)(6); (10) unauthorized access under 18 U.S.C. § 1030(a)(5)(c); (11) unauthorized access with intent to defraud under 18 U.S.C. § 1030(a)(4); (12) federal trademark infringement under the Lanham Act, 15 U.S.C. § 1114, *et seq.*; (13) federal common law trademark infringement and false advertising under 15 U.S.C. § 1125(a)(1)(A); (14) contributory trademark infringement; (15) conversion; (16) false advertising under N.Y. Gen. Bus. Law § 350, *et seq.*; and (17) deceptive acts and practices under N.Y. Gen. Bus. Law § 349. In their prayer for relief in the complaint, the plaintiffs sought monetary damages, attorneys' fees and costs, a permanent injunction against the defendant, and an order for the defendant to deliver his inventory of infringing goods to the plaintiffs.

On July 11, 2013, the plaintiffs filed a request for the Clerk of Court to enter default against the defendant, which was granted on July 12, 2013. Judge Abrams issued an order to show cause why default judgment should not be entered against the defendant on August 27, 2013, after which the plaintiffs filed a motion for default judgment. On September 12, 2013, Judge Abrams granted the motion for default judgment and issued a permanent injunction against the defendant. In the default judgment order, the Court found that the facts alleged in the amended complaint were sufficient to state claims for relief on all 17 of the plaintiffs' claims and thus entered a final judgment as to liability. The Court further found that a permanent injunction was justified because the defendant's conduct "has caused substantial and irreparable harm to Sprint, and will continue to cause substantial and irreparable harm to Sprint unless enjoined."

(September 12, 2013 Order Granting Default Judgment ¶ 5.) The Court allowed Sprint six

months to conduct discovery as to the damages it would seek in the inquest on damages.

On April 14, 2014, the Court granted the plaintiffs' motion to amend their complaint to

change the defendant's name to Andrew Chong upon discovering that "Andrew Leung" was an

alias. On April 30, 2014, the plaintiffs submitted their Proposed Findings of Fact and

Conclusions of Law ("Statement of Damages"), along with the Affidavit of Clint Breithaupt (the

"Breithaupt Affidavit"); the Affidavit of Stacey Sutton (the "Sutton Affidavit"); and the

Affidavit of Stuart Drobny (the "Drobny Affidavit"). Chong did not file a response.

## DISCUSSION

### I.     Legal Standard

The Court of Appeals set forth the procedural rules applicable to the entry of a default

judgment in City of New York v. Mickalis Pawn Shop, LLC:

> "Federal Rule of Civil Procedure 55 is the basic procedure to be followed when
> there is a default in the course of litigation." Vt. Teddy Bear Co. v. 1–800
> Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004). Rule 55 provides a "two-step
> process" for the entry of judgment against a party who fails to defend: first, the
> entry of a default, and second, the entry of a default judgment. New York v.
> Green, 420 F.3d 99, 104 (2d Cir. 2005). The first step, entry of a default,
> formalizes a judicial recognition that a defendant has, through its failure to defend
> the action, admitted liability to the plaintiff. . . . The second step, entry of a
> default judgment, converts the defendant's admission of liability into a final
> judgment that terminates the litigation and awards the plaintiff any relief to which
> the court decides it is entitled, to the extent permitted by Rule 54(c).

645 F.3d 114, 128 (2d Cir. 2011).

Where default has been entered against the defendant, courts are to accept as true all of

the well-pleaded facts alleged in the complaint, except those concerning the amount of damages.

See Au Bon Pain Corp. v. Artect Inc., 653 F.2d 61, 65 (2d Cir. 1981); Transatlantic Marine

Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir.

1997) (citing <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992); <u>All-Star Mktg. Grp., LLC v. Media Brands Co., Ltd.</u>, 775 F. Supp. 2d 613, 618 (S.D.N.Y. 2011). "[E]ven after [a] default, . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." <u>In re Industrial Diamonds Antitrust Litig.</u>, 119 F. Supp. 2d 418, 420 (S.D.N.Y 2000). Where the plaintiff's well-pleaded facts are sufficient to state a claim on which relief can be granted, the only remaining issue in an inquest is whether the plaintiff has provided adequate support for its requested relief. <u>See</u> <u>Gucci Am., Inc. v. Tyrrell-Miller</u>, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (citing <u>Credit Lyonnais Sec. (USA), Inc. v. Alcantara</u>, 183 F.3d 151, 155 (2d Cir. 1999)).

"[A] plaintiff seeking to recover damages against a defaulting defendant must prove its claim though the submission of evidence. . . ." <u>Malletier v. Carducci Leather Fashions, Inc.</u>, 648 F. Supp. 2d. 501, 503 (S.D.N.Y. 2009). A court may determine the amount, if any, a plaintiff is entitled to recover without holding a hearing as long as (1) the court determines the proper rule for calculating damages, and (2) the evidence submitted by the plaintiff establishes "with reasonable certainty" the basis for the damages. <u>Id.</u> (citing <u>Credit Lyonnais Sec. (USA), Inc.</u>, 183 F.3d at 155, and <u>Transatlantic Marine Claims Agency Inc.</u>, 109 F.3d at 111); <u>Tyrrell-Miller</u>, 678 F. Supp. 2d at 121 (citing <u>Langenberg v. Sofair</u>, 03 Civ. 8339 (KMK)(FM), 2006 WL 3518197, at *1 (S.D.N.Y. Dec. 7, 2006)).

4

## II.      Damages

### A.      Facts

The following facts are established by the allegations in the amended complaint, which are deemed admitted except to the extent they concern the amount of damages, and the plaintiffs' admissible evidence submitted for this inquest.

The plaintiffs, Sprint Nextel Corporation and its affiliates, offer a comprehensive range of wireless and wireline communications services to consumers. Sprint's wireless program enables Sprint customers to choose from a variety of monthly voice and data plans for use on devices on the Sprint wireless network. In addition to being available through Sprint's website and in its stores, Sprint phones and wireless services are sold nationally through authorized dealers and retailers, with whom Sprint has contractual relationships. Sprint subsidizes its customers' acquisition of Sprint phones by selling them at prices lower than the wholesale price. Sprint customers are required to use Sprint service plans and its wireless network, a requirement that enables Sprint to sell its phones at the reduced, subsidized prices.

Chong has been involved in a scheme by which he acquires Sprint phones at the reduced price under false pretenses, disables the proprietary software that prevents the phones from being used outside of the Sprint network (a process commonly referred to as "unlocking"), and then sells the phones in overseas markets where the wireless service provider does not subsidize phones, thus earning a profit of the amount by which Sprint reduces the cost of its phones from the wholesale price. Chong, without authorization, advertises new Sprint phones and unlocking services over the internet using Sprint's federally registered trademarks.

Through its investigation, Sprint identified 17 specific prepaid Sprint phones that Chong fraudulently bought and sold. For each prepaid phone that Sprint sells, the company receives an

average revenue of $456 in the form of fees and charges for wireless service. Sprint submits

evidence indicating that Chong trafficked in postpaid phones as well, but because Sprint's

investigation did not identify specific postpaid phones that were bought and sold, it only seeks

actual damages on the 17 prepaid phones.

   B.      **Damages Under the Lanham Act**

   "'To succeed on . . . Lanham Act claims, [the plaintiff] must show that it has a valid mark

that is entitled to protection under the Lanham Act and that [the defendant's] actions are likely to

cause confusion with [the plaintiff's] mark." Tyrrell-Miller, 678 F. Supp. 2d at 119 (quoting The

Sports Authority, Inc. v. Prime Hospitality Corp., 89 F.3d 955, 960 (2d Cir. 1996)). Because the

Court already found that Sprint has established Chong's liability, the only matter before the

Court is whether Sprint's evidence sufficiently supports its request for $125,874.15.

   Under the Lanham Act, plaintiffs who establish liability for trademark infringement are

entitled,

> subject to the principles of equity, to recover (1) defendant's profits, (2) any
> damages sustained by the plaintiff, and (3) the costs of the action. The court shall
> assess such profits and damages or cause the same to be assessed under its
> direction. In assessing profits the plaintiff shall be required to prove defendant's
> sales only; defendant must prove all elements of cost or deduction claimed. In
> assessing damages the court may enter judgment, according to the circumstances
> of the case, for any sum above the amount found as actual damages, not
> exceeding three times such amount. If the court shall find that the amount of the
> recovery based on profits is either inadequate or excessive the court may in its
> discretion enter judgment for such sum as the court shall find to be just, according
> to the circumstances of the case.

15 U.S.C. § 1117(a). "The award of profits is justified by three rationales: (1) to deter a willful

wrongdoer from doing so again; (2) to prevent the defendant's unjust enrichment; and (3) to

compensate the plaintiff for harms caused by the infringement." Merck Eprova AG v. Gnosis

S.p.A., 901 F. Supp. 2d 436, 457 (S.D.N.Y. 2012). Under Section 35(b) of the Lanham Act, if a

trademark owner is awarded damages based on the defendant's profits, the Court must treble the amount of actual damages in the absence of "extenuating circumstances" when the infringement involves:

> (1) intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services; or

> (2) providing goods or services necessary to the commission of a violation . . . with the intent that the recipient of the goods or services would put the goods or services to use in committing the violation.

15 U.S.C. § 1117(b). "The treble damages provision thus is intended to 'be punitive rather than compensatory.'" TigerCandy Arts, Inc. v. Blairson Corp., 09 Civ. 6215 (GBD)(FM), 2012 WL 760168, at *5 (S.D.N.Y. Feb. 23, 2012), report and recommendation adopted, 2012 WL 1948816 (May 30, 2012), (quoting Louis Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966, 971 (2d Cir. 1985)).

Sprint's evidence demonstrates sufficiently that it lost profits in the amount of $456 on 17 prepaid phones, for a total loss of $7,752.00. The submitted evidence and Chong's admissions upon default judgment show that Sprint is entitled to treble damages because Chong intentionally infringed Sprint's trademarks for his own profit. See Ortho Sleep Products, LLC v. Dreamy Mattress Corp., 11 Civ. 6049 (CBA)(CLP), 2012 WL 6621288, at *10 (E.D.N.Y. Aug. 29, 2012), report and recommendation adopted, 2012 WL 6589208 (Dec. 17, 2012) (awarding treble damages "where defendants have clearly profited from their willful and intentional infringement"). Further, Sprint's evidence indicates that, as a result of Chong's failure to participate in this litigation, the actual damages Sprint seeks are modest as compared to the likely extent of Chong's infringement, a factor that has been found to militate in favor of treble damages. See Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc., 880 F. Supp. 1005,

1025-26 (S.D.N.Y. 1994) ("Given the modest amount of actual damages calculated above, I find that a trebling of the actual damages is necessary to compensate [the plaintiff] for its loss of goodwill . . . and to provide properly for deterrence of [the defendant] from committing further acts of wilful bad faith violations of § 43(a) [of the Lanham Act].""). The Court therefore finds that treble damages are required, and that Sprint is entitled to $23,256.00 under the Lanham Act.

### C.   Attorneys' Fees

In "exceptional cases," a court may award attorneys' fees to the prevailing party under the Lanham Act. 15 U.S.C. § 1117(a). "Such fees should be awarded only on evidence of fraud or bad faith." Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd., 996 F.2d 1366, 1383 (2d Cir. 1993) (internal quotation marks omitted). "Exceptional circumstances include willful infringement," Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995) (internal quotation marks omitted), and "willful infringement may be established by virtue of a defendant's default," Ortho Sleep Products, LLC, 2012 WL 6621288, at *11; see also Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) ("By virtue of the default, [the defendants'] infringement is deemed willful."). As stated above, Chong's commission of trademark infringement against Sprint was willful and done in bad faith. In addition, Chong not only frustrated the litigation process by failing to participate, he obstructed the plaintiffs and caused unnecessary delay by using an alias that was only uncovered through Sprint's investigations late in this litigation. Because Chong did not cooperate in this litigation and because Sprint's evidence demonstrates willful infringement, the Court recommends that Sprint be awarded attorneys' fees under § 1117(a).

1.       **Legal Standard for Calculating Reasonable Attorneys' Fees**

Courts should determine the "presumptively reasonable fee" for an attorney's services by looking to "what a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany ("Arbor Hill"), 522 F.3d 182, 184 (2d Cir. 2008); see Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)) ("In determining a fee award, the typical starting point is the so-called lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'").[1] The Court of Appeals calculates a "presumptively reasonable fee" as the product of a reasonable hourly rate and a reasonable number of hours engaged in litigating the matter. See Arbor Hill, 522 F.3d at 183-84. Requested fees must be supported "with contemporaneous time records establishing 'for each attorney [for whom fees are sought], the date [on which work was performed], the hours expended, and the nature of the work done.'" Annuity, Welfare & Apprenticeship Skill Imp. & Safety Funds of Int'l Union of Operating Engineers, Local 15, 15A, 15C, 15D, AFL-CIO v. Integrated Structures Corp., 12 Civ. 436 (LGS)(KNF), 2013 WL 2649644, at *7 (S.D.N.Y. June 13, 2013) (quoting New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983)). In determining the reasonable fee for a particular case, courts rely on reasonable hourly rates prevailing in the district for similar services provided by attorneys with comparable skill and experience. See id.

---

[1] The Court of Appeals in Arbor Hill called for abandoning the "lodestar" language used in Hensley v. Eckerhart, 461 U.S. 424 (1983), in favor of the term "presumptively reasonable fee," which would shift the emphasis from a mechanical analysis of reasonable hourly rates to a more holistic and discretionary assessment allowing a court's calculation of reasonable total fees to factor into the determination of reasonable hourly rates. See Arbor Hill, 522 F.3d at 190. The Supreme Court, however, issued a 2010 opinion endorsing the lodestar method and language. See Perdue v. Kenny A., 559 U.S. 542, 561 (2010) (deciding the issue in the context of 42 U.S.C. § 1988's fee-shifting provision). "In the wake of Kenny A., the Second Circuit has used the terms 'lodestar' and 'presumptively reasonable fee' interchangeably." Telebrands Corp. v. HM Imp. USA Corp., 09 Civ. 3492 (ENV)(RLM), 2012 WL 3930405, at *11 n.17 (E.D.N.Y. July 26, 2012), report and recommendation adopted, 2012 WL 3957188 (Sept. 10, 2012) (citing Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011)).

(citing <u>Blum v. Stenson,</u> 465 U.S. 886, 896 n.11 (1984)); <u>Sub-Zero, Inc. v. Sub Zero NY</u>

<u>Refrigeration & Appliances Servs., Inc.,</u> 13 Civ. 2548 (KMW)(JLC), 2014 WL 1303434, at *7

(S.D.N.Y. Apr. 1, 2014); <u>R & L Livery, Inc.,</u> 2010 WL 3613967, at *3. "It is the fee movant's

burden to establish the prevailing market rate." <u>Sub-Zero, Inc.,</u> 2014 WL 1303434, at *7.

Sprint seeks $89,587.97 in attorneys' fees for the work performed by the plaintiffs' law

firm, Carlton Fields, P.A., out of its offices in West Palm Beach, Florida; Atlanta, Georgia; and

New York, New York. In support of its request, Sprint submits the Sutton Affidavit, which

includes the itemized time sheets for the following professionals who worked on this litigation:

shareholders James B. Baldinger, Gail E. Podolsky, Stacey K. Sutton, and Natalie A. Napierala;

associates F. Xavier Balderas and Dane M. Dunson; paralegals Maria A. Delgado, Fredrick

Lurie, and Jennifer Yasko; research librarian Marcia Morelli; and case clerks Sue Ann Foster and

LaJuana Gaddy. The six attorneys who billed for fees in this case have experience in business

litigation, trade regulation, or intellectual property litigation.

## 2.    Reasonable Hourly Rates

For the shareholders, Sprint proposes hourly rates of $480 for Baldinger (over 20 years'

experience); $475 for Napierala (over 20 years' experience); $365 for Podolsky (nine years'

experience); and $350 for Sutton (13 years' experience). For the associates, Sprint proposes

hourly rates of $375 for Balderas (seven years' experience) and $335 for Dunson (three years'

experience). For non-attorney staff, Sprint proposes hourly rates of $205 for paralegal Lurie;

$185 for paralegal Yasko; $180 for paralegal Delgado; $180 for research librarian Morelli; $40

for case clerk Gaddy; and $35 for case clerk Foster.

The rates for shareholders Baldinger and Napierala are reasonable and in line with the

prevailing rates in this District for similar services by lawyers with a similar level of experience.

See Sub-Zero, Inc., 2014 WL 1303434, at *8 (finding that an hourly rate of $785, though higher than any previously granted rate in a trademark case this District, was reasonable for a partner with over 20 years' experience, and finding $485 to be a reasonable rate for a partner with 16 years' experience); Ritchie v. Gano, 756 F. Supp. 2d 581, 583-84 (S.D.N.Y. 2010) (finding $475 to $525 per hour to be a reasonable range for rates in a trademark infringement action for partners with over 20 years' experience); Malletier v. Artex Creative Int'l Corp., 687 F. Supp. 2d 347, 359 (S.D.N.Y. 2010) (finding hourly rates between $475 and $540 for senior partners to be reasonable in a trademark case); Diplomatic Man, Inc. v. Brown, 05 Civ. 9069 (JSR), 2007 WL 2827125, at *2 (S.D.N.Y. Sept. 28, 2007) (finding $440 to be a reasonable hourly rate for a partner in a copyright case). Likewise, the proposed hourly rates of $365 and $350 for shareholders Podolsky and Sutton, respectively, are presumptively reasonable.

The proposed hourly rate of $335 for associate Dunson is reasonable. The proposed hourly rate of $375 for associate Balderas, however, is not. Sprint does not explain why it proposes a higher rate for Balderas, an associate with seven years' experience, than it does for shareholder Sutton, who has 13 years' experience, or shareholder Podolsky, who has nine years' experience. Sprint has the burden of showing that its fee request is presumptively reasonable, meaning that its proposed rates are "what a reasonable, paying client would be willing to pay." Arbor Hill, 522 F.3d at 184. It is doubtful that a reasonable client would be willing to pay an associate at a rate higher than two more experienced shareholders absent some justification, which Sprint does not provide. Additionally, the Court notes that the proposed rate of $375 for Balderas exceeds or is at the upper end of what some courts in New York are willing to award to an associate in similar cases. See, e.g., Artex Creative Int'l Corp., 687 F. Supp. 2d at 359 ("The hourly rate[] of $390.00 . . . charged by the associates . . . representing Vuitton fall at the very

top of the spectrum of reasonable hourly rates for associates. Even considering the fact that [an associate] has been practicing for eleven years and has published several articles on intellectual property, his hourly rate [of $390] is higher than some courts in this circuit would allow."); Telebrands Corp., 2012 WL 3930405, at *12 ("Courts in [the E.D.N.Y.] have recently awarded associate hourly rates of $100 to $295, including rates for associates in intellectual property cases."); U.S.A. Famous Original Ray's Licensing Corp. v. Famous Ray's Pizza Buffet Inc., 12 Civ. 8753, 2013 WL 5363777 at *7-8 (S.D.N.Y. Sept. 26, 2013) (awarding a $315 hourly rate for an intellectual property partner with 12 years of experience); OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc., 09 Civ 8665 (JGK)(FM), 2010 WL 5538552, at *4 (S.D.N.Y. Dec. 6, 2010), report and recommendation adopted, 2011 WL 43459 (Jan. 5, 2011) (finding hourly rates of $400 and $391.50 reasonable for senior associates and hourly rates of $382.50 and $355 reasonable for mid-level associates).

The hourly rates of $205, $185, $180 for the paralegals are reasonable. See Sub-Zero, Inc., 2014 WL 1303434, at *9 (finding $200 per hour to be a reasonable rate for a paralegal); Eprova AG, 2011 WL 1142929, at *10 (finding $205 and $170 to be reasonable hourly rates for paralegals); Lucky Brand Dungarees, Inc. v. Ally Apparel Resources, LLC, 05 Civ. 6757 (LTS)(MHD), 2009 WL 466136, at *6 (S.D.N.Y. Feb. 25, 2009) (finding hourly rates between $135 and $205 for paralegals to be reasonable). With respect to research librarian Morelli, the Court finds it appropriate to award fees in a range of what is reasonable for paralegals and thus finds reasonable the requested rate of $180 per hour. Finally, the Court finds the requested rates of $35 and $45 to be in line with accepted rates for case clerks and other support staff. See Merck Eprova AG, 2011 WL 1142929, at *10 (awarding a rate of $150 for support staff but noting that a "$50 per hour rate [is] generally used in this district").

3.      **Hours Reasonably Expended on Case**

The party seeking attorneys' fees must establish the hours reasonably expended on the case and must submit adequate contemporaneously prepared time records. Arbor Hill, 522 F.3d at 183-84. "The fee applicant must exercise 'billing judgment' and exclude any hours that were not reasonably expended on the case." Sub-Zero, Inc., 2014 WL 1303434, at *9 (citing Hensley, 461 U.S. at 434).

After careful review, the Court finds that a significant number of entries in Sprint's time records are "block-billed," making it difficult to determine the amount of time expended on a given task, or otherwise vague or reflective of excessive time expenditure. Cf. Skanga Energy & Marine Ltd. v. Arevenca S.A., 11 Civ. 4296 (DLC)(DF), 2014 WL 2624762, at *3 (S.D.N.Y. May 19, 2014) ("Vague and 'block-billed' time records are insufficient to substantiate a party's claimed expenditure of time."); Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic, 10 Civ. 05256 (KMW)(DF), 2012 WL 5816878, at *10 (S.D.N.Y. Nov. 14, 2012) (citing Green v. City of New York, 403 F. App'x 626, 630 (2d Cir. 2010)) ("[A]t times, courts have reduced or even disallowed requested attorneys' fees where the supporting time records were not broken out with sufficient detail to enable it to determine the reasonableness of the time spent on particular tasks."). When a plaintiff submits vague and block-billed time records, courts will frequently apply an across-the-board percentage reduction, often in the range of 20-30%, as a "practical means of trimming fat" from a fee application. Carey, 711 F.2d at 1146; see Thai-Lao Lignite (Thailand) Co., Ltd, 2012 WL 5816878, at *11; Skanga Energy & Marine Ltd., 2014 WL 2624762, at *3; Suchodolski Assocs., Inc. v. Cardell Financial Corp., 03 Civ. 4148 (WHP), 2008 WL 5539688, at *2 (S.D.N.Y. Dec. 18, 2008)

(collecting cases in which courts have reduced fee requests by up to 30% for vague time records).

In light of Sprint's vague block billing and excessive time expenditure, as well as the unreasonable fee rate proposed for Balderas, the Court applies a 10% across-the-board reduction to the requested amount of $89,584.97. The Court therefore finds that Sprint is entitled to attorneys' fees in the amount of $80,626.47.

**D.    Investigation Costs**

Sprint seeks $13,033.18 in costs incurred by retaining Stumar Investigations, a private investigative firm. "Recovery of private investigator fees has been permitted in trademark cases as part of an award of attorneys' fees." Eu Yan Sang Int'l Ltd. v. S & M Enters. (U.S.A.) Enter. Corp., 09 Civ. 4235 (RRM)(RER), 2010 WL 3824129, at *8 (E.D.N.Y. Sept. 8, 2010), report and recommendation adopted, 2010 WL 3806136 (Sept. 23, 2010) (citing Silhouette Int'l Schmied AG v. Vachik Chakhbazian, No. 04 Civ. 3613, 2004 WL 2211660, at *4 (S.D.N.Y. Oct. 4, 2004)). Awarding investigative fees is especially justified where the expense was incurred because of the defendant's refusal to participate in the litigation. See Ahava (USA), Inc. v. J.W.G., Ltd., 286 F. Supp. 2d 321, 325 (S.D.N.Y. 2003) ("Ahava's law firm retained an outside investigator to investigate JWG's actions and conduct trademark searches, incurring a cost of $1,410.61. The Court will allow the fee, once again noting that JWG could have avoided such charges by cooperating with Ahava and the Court in this proceeding.") (internal citation omitted) (citing Brown v. Party Poopers, Inc., 00 Civ. 4799 (JSM), 2001 WL 1380536, at *7 (S.D.N.Y. July 9, 2001)).

Here, investigative fees were incurred because Chong failed to participate in this action, and these fees were compounded by his use of an alias. The Court therefore finds that

14

investigative fees are recoverable here. In support of its request for investigative costs, Sprint submits an affidavit from Stuart Drobny, the president of the private investigation firm retained by the plaintiffs. The Court has reviewed Drobny's time records and statement of additional costs, which includes expenses like purchasing three phones from Chong and purchasing supplies for undercover operations. The Court concludes that the fees incurred and the time expended are reasonable and were necessary to prosecute this action and submit evidence concerning damages. The Court therefore recommends granting investigative costs to the plaintiffs in the amount of $13,033.18.

## CONCLUSION

For the foregoing reasons, the plaintiff should be awarded (1) $23,256.00 in damages; (2) $80,626.47 in attorneys' fees; and (3) $13,033.18 in investigative costs, for a total award of $116,915.65.

\* \* \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Ronnie Abrams at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be

addressed to Judge Abrams. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge


DATED:      New York, New York
            July 14, 2014